UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RIDER LEONEL RIVERO-GARCIA,<br><br>Petitioner(s),<br><br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondent(s). | CASE NO. C26-1720-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner was arrested in October 2025 and has been in immigration detention since then. Dkt. No. 2 ¶¶ 3, 11–15. He filed a petition for writ of habeas corpus under 28 U.SC. § 2241. Dkt. No. 1. He argues that his detention is unlawful because the Government[1] violated his constitutional right to procedural due process. *Id*. at 24–25. The Court agrees and will therefore grant the petition and order Petitioner's immediate release.

## I.    BACKGROUND

Petitioner is a citizen of Venezuela who entered the United States in September 2023, seeking asylum. Dkt. No. 2 ¶¶ 2, 5. He was detained immediately upon entry, but released a few days later. *Id*. ¶ 5. He was issued a notice to appear and released on an order of recognizance

---

[1] This order refers to the Federal Respondents—the Seattle Field Officer Director of Enforcement and Removal Operations for United States Immigration and Customs Enforcement ("ICE"), the Secretary of the United States Department of Homeland Security ("DHS"), the United States Attorney General, and DHS—collectively as "the Government."

ORDER GRANTING HABEAS PETITION - 1

("OREC").  Dkt. No. 8 ¶ 4.  Petitioner applied for relief from removal and work authorization in April 2024.  Dkt. No. 2 ¶ 7, Dkt. No. 8 ¶ 6.

On October 26, 2025, Petitioner left his home in Beaverton, Oregon, to get coffee, but his car would not start.  Dkt. No. 2 ¶ 11.  Men dressed in civilian clothing and dogs surrounded Petitioner's car.  One of the men hit his car window so strongly that it shattered, sending glass into Petitioner's face and mouth.  *Id*. ¶ 12.  Petitioner did not know the men were ICE officers, as they were not wearing uniforms and showed no identification.  *Id.*  Petitioner feared he was being robbed, but eventually Petitioner exited the car, while the men yelled at him and then forced him into the back of a van.  *Id*. ¶¶ 13–14.  They drove Petitioner to a dark basement in Portland, Oregon, where they required him to face a wall for about an hour.  *Id*. ¶ 14.  When two other ICE officers arrived, they told Petitioner that he was a member of the Tren de Aragua gang (which he told them was not true) and they told him he would be sent to CECOT prison in El Salvador.  *Id*. ¶ 15; Dkt. No. 3-1 at 7.  Petitioner was eventually put on a bus to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington.  Dkt. No. 2 ¶ 15.  At no point between Petitioner's initial encounter with the men outside his car and his arrival at the NWIPC did anyone answer Petitioner when he asked why he was being detained.  *Id*. ¶ 16.

While in detention, Petitioner alleges that he has suffered from a variety of injuries and sicknesses, some caused by the food he has been given at NWIPC and others caused by fights or by glass that entered Petitioner's mouth when his car window was broken during his arrest.  Dkt. No. 2 ¶¶ 19–23.

In December 2025, Petitioner requested a bond hearing and an immigration judge denied bond.  *See* Dkt. No. 3-1 at 11–12.  In March 2026, an immigration judge denied Petitioner's application for relief from removal, and Petitioner appealed that decision to the Board of Immigration Appeals. Dkt. No. 2 ¶ 25.  In May 2026, Petitioner filed a petition for a writ of habeas

ORDER GRANTING HABEAS PETITION - 2

corpus in this Court, requesting immediate release from detention.  Dkt. No. 1.  For the following reasons, the Court grants the habeas petition.

## II.   ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]"  U.S. CONST. AMEND. V.  The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context."  53 F.4th 1189, 1206–07 (9th Cir.

ORDER GRANTING HABEAS PETITION - 3

2022).  Petitioner and the Government both apply the *Mathews* test here (Dkt. No. 1 ¶¶ 32–39, Dkt. No. 7 at 7–9), and the Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.[2]

### A.    Petitioner Was Detained Under 8 U.S.C. § 1226(a).

To determine whether Petitioner's detention complies with due process, the Court must first determine the statutory authority governing Petitioner's detention.  *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

The Government argues that Petitioner falls within the mandatory detention scheme under Section 1225(b)(2) as an applicant for admission to the United States. Dkt. No. 7 at 6.  The Court reiterates its agreement with other courts that reject an expansion of the scope of mandatory detention under Section 1225(b)(2) to include Petitioner.  Petitioner's status as a person previously released with conditions, and who has been living in this country for years, counsels against this expanded view of the Immigration and Nationality Act as amended.  *See, e.g., Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da*

---

[2] The Government's return argues that "[t]o the extent that Petitioner seeks a court-ordered bond hearing, he should not be provided with one because he failed to exhaust his administrative remedies" by failing to timely appeal his post-detention (December 2025) bond determination to the Board of Immigration Appeals.  Dkt. No. 7 at 9–10. Petitioner does not request a bond hearing, however; he seeks immediate release.  *See* Dkt. No. 1 at 15.  The Court therefore need not address further the Government's exhaustion argument.

ORDER GRANTING HABEAS PETITION - 4

*Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)).   "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years."  *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases).   Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a).

**B.      Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  That Petitioner was arrested outside his home, transferred to a facility in a different state, and remains detained months later undoubtedly deprived him of an established interest in his liberty.

The Government contends that Petitioner has "a lesser liberty interest than a citizen" and that detention of a noncitizen can be constitutionally valid.  Dkt. No. 7 at 7–8.  That detention of a noncitizen can be constitutionally valid does not imply that it is always constitutionally valid,

ORDER GRANTING HABEAS PETITION - 5

and the Court disagrees with the Government to the extent that it argues that Petitioner's liberty interest is not sufficiently robust as to be constitutionally protected. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.").

The Government also alleges that Petitioner was charged with certain crimes in 2024 and 2025, and suggests that such conduct is inconsistent with the terms of his OREC. Dkt. No. 7 at 8. The Government does not contend that Petitioner has been convicted of any crime, nor has it produced any records related to any alleged criminal proceedings. Rather, the records the Government *has* produced do not cite Petitioner's criminal charges as the reason why he was detained, nor do they document that his OREC has ever been revoked for this or any other reason. *See* Dkt. No. 9-1 at 3–4. The Court declines to credit the Government's unsubstantiated allegations, particularly because it is not clear that those allegations bear any connection to the justification for Petitioner's arrest at the time it occurred. Moreover, the Government cites no authority suggesting that noncitizens charged with but not convicted of a crime have a diminished interest in continued liberty.

Accordingly, the first *Mathews* factor favors Petitioner.

## C.    The Risk of Erroneous Deprivation of Liberty is High.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court agrees with Petitioner that the risk of erroneous deprivation in the absence of a pre-detention hearing is high.

The Government argues that the risk of erroneous deprivation is low because "Petitioner was provided with notice and an opportunity to respond when he was re-detained." Dkt. No. 7 at 8. But the Government cites nothing for this contention, and as noted earlier in this order, the record does not document that, at the time he was detained, Petitioner received either notice of the reason he was being detained or an opportunity to be heard. To the contrary, the Government makes no effort to dispute any of the circumstances of Petitioner's arrest, including its violent nature. The absence of pre-deprivation procedural safeguards leads to a high risk of an erroneous deprivation of Petitioner's liberty. Accordingly, the Court finds that the second *Mathews* factor favors Petitioner. *See Doe*, 787 F. Supp. 3d at 1094.

**D.      The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

As this Court has ruled repeatedly, the Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low. Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

The Government argues that "DHS has a significant interest in being able to release a noncitizen on conditions of release and be[ing] able to revoke that release when those conditions are violated." Dkt. No. 7 at 9. According to the Government, requiring a pre-detention hearing "would inhibit the Executive's function of immigration enforcement." *Id*.   The Court disagrees that the Government's stated interest is unreasonably inhibited if a pre-deprivation hearing is

ORDER GRANTING HABEAS PETITION - 7

required.  Petitioner's alleged criminal charges were filed many months before Petitioner was detained, and again, those charges were not mentioned as the impetus for Petitioner's arrest.  These facts undermine any suggestion that the Government's interest in revoking release for those who have been accused of conduct that, if true, would violate their conditions of release, is so high that it must be satisfied immediately.  To the contrary, the record suggests the Government violently arrested Petitioner without notice and now seeks to justify the arrest after the fact.

For these reasons, the Court finds that the Government's interest in re-detaining a non-citizen previously released without a hearing is minimal: any administrative or financial burdens in providing a pre-deprivation hearing to Petitioner are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.  The third and final *Mathews* factor favors Petitioner.

As the Court's review of the *Mathews* factors suggests, Petitioner's detention does not comport with due process.

### III.   REMEDY

Having determined that Petitioner's detention violates his constitutional right to due process, the Court finds Petitioner's detention to be unlawful and will grant the habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief."  *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).  "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require."  *Id*. (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).  "Declaratory and injunctive relief are proper habeas remedies."  *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of

ORDER GRANTING HABEAS PETITION - 8

habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

Furthermore, as explained in this order, due process requires that Petitioner receives notice and an opportunity to be heard before he may be re-detained for alleged OREC violations. *See, e.g., Llanes Tellez*, __ F. Supp. 3d __, 2025 WL 3677937, at *9 (N.D. Cal. Dec. 18, 2025) ("If the government wishes to re-detain [Petitioner], it must provide him with the pre-detention hearing before a neutral decisionmaker required by due process."). At any future hearing for this purpose, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe*, 787 F. Supp. 3d at 1089.

### IV.    CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS that Petitioner shall be released from custody no later than June 11, 2026, on the terms of his prior OREC. The Government shall file a status report no later than June 12, 2026, to confirm Petitioner's release in compliance with this order. The Court will consider any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 10th day of June, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING HABEAS PETITION - 9